## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### Eastern Division

_____

| | | |
|---|---|---|
| DAVID LUNSFORD | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No._____ |
| | § | |
| PRUDENTIAL INS. CO. OF | § | |
| AMERICA | § | |
| | § | |
| Defendant. | § | |
| | § | |

_____

## COMPLAINT
_____

COMES THE PLAINTIFF, David Lunsford, bringing this lawsuit against the above-captioned Defendant, Prudential Ins. Co. of America, and showing as follows:

### I.
### PARTIES, JURISDICTION, AND VENUE

1.      The Plaintiff, David Lunsford, is a citizen and resident of Henderson County Tennessee.

2.       The Defendant, Prudential Ins. Co. of America, offers a disability benefit plan to eligible participants such as Plaintiff.    Plaintiff did pay premiums for this benefit.

1

3.     Jurisdiction is proper in this court pursuant to 28 U.S.C. 1331 and the Employee Income Retirement Security Act (ERISA) including, but not limited to, the following sections: Section 502(a)(1)(B) at 29 U.S.C. §1132(a)(1)(B); and Section 502(g) at 29 U.S.C. §1132(g).

4.     Venue is proper in this court under ERISA, Section 502(e)(2) at 29 U.S.C. §1132(e)(2).   The cause of action arose in within the jurisdictional limits of this court and the denials at issue were sent by Defendant to Plaintiff at his address in Henderson County, Tennessee which is within the jurisdictional limits of this court.

## II.
## FACTUAL BASES FOR SUIT

5.      As an eligible participant, Plaintiff applied for disability benefits.

6.     Defendant paid Plaintiff disability benefits for the period of February 10, 2010 through August 1, 2011.

7.     Defendant ceased paying Plaintiff disability benefits as of August 2, 2011.

8.     Plaintiff exhausted administrative remedies by appealing Defendant's original denial of benefits rendered on August 31, 2011. Defendant then denied Plaintiff's appeal by letter of April 12, 2012.

Accordingly, Plaintiff has exhausted administrative remedies.

9.     The administrative record shows, and it is the fact, that Plaintiff suffered a motor vehicle accident which caused him both physical and mental injury, including a brain injury.

10.     The administrative record shows, and it is the fact, that Plaintiff met the definition of "disabled" for obtaining Social Security benefits.

11.     Defendant, in its denials, claims that it considered both the findings of Social Security, as well as the findings of Plaintiff's physicians (including his mental status examiner).   However, Defendant, owing to a conflict of interest

and other biases, gave the greater weight to physicians it paid and retained, and falsely amplified unsupported medical conclusions.

12.     Plaintiff is disabled due to severe physical limitations (e.g. head, back, legs, which preclude standing, walking, and mobility) as well as severe mental limitations.   The mental limitations include confusion, cognitive disorganization with respect to speech, thought, or calculation; difficulty concentrating; difficulty understanding and remembering; and inability to perceive and communicate.

13.     Defendant's own neuropsychological provider[1] found, while performing "symptom validity testing (for malingering)," that Plaintiff was not

---

[1]     "Defendant's own" . . . refers to Defendant, not the Court or an impartial tribunal, choosing and paying an examining physician for an opinion.

malingering and that he met a profile consistent with "demented patients." Moreover, the "test data reveal very serious verbal and visual memory problems; and functional reports reflect preserved but impaired daily functioning."

14.    Defendant's own neuropsychological provider found that Plaintiff was "unable to write a sentence correctly."   When he tried to reproduce a visual figure, it was distorted.   In fact, the provider found "his overall performance on this test raised concerns regarding potential cognitive dysfunction."

15.    Defendant's own neuropsychological provider found Plaintiff to have an IQ of only 71 and to be functioning as well as 3% of his peers.   The provider found, "individuals with this level of intelligence generally struggle in their day-to-day lives to some extent.   They have difficulty living independent, and typically need assistance, especially at times of additional stress.   From an occupational perspective, they are usually restricted to low-level detailed work that does not require independent thought or following complex commands."

16.    Defendant's own neuropsychological provider also considered Plaintiff's memory, finding "a general memory index of 63, which is only at the first percentile as compared to other men his age.   He has tremendous

4

difficulty learning new information."   "On this test, he demonstrated very serious difficulties with both verbal and visual learning skills."

17.   Defendant's own neuropsychological provider found Plaintiff had "great difficulty" in merely connecting dots, owing to "acquired brain dysfunction."

18.   Defendant's own neuropsychological provider found that it took Plaintiff so long to read the first questions of the MMPI that the examiner had to read the questions to him.

19.   Defendant's own neuropsychological provider found Plaintiff to have "limited psychological insight, and some defensiveness regarding his mental health."

20.   Despite these detailed factual findings, Defendant's neuropsychological provider reached unsupported conclusions to questions submitted by Defendant, such as:   "He is able to sustain a workday and workweek, from a mental perspective, with occasional lapses due to his cognitive condition.   He is able to work with the general public.   He is able to get along with coworkers and supervisors, and can accept criticism and redirection.   He can adapt to low-level change in the working environment."

21.   Then, in conclusion, Defendant's own neuropsychological provider stated, ambiguously:

"I believe that Mr. Lunsford has cognitive limitations <u>that affect his ability to work.</u>   These cognitive limitations are not sufficient to preclude him from functioning at many work-and home-related tasks. <u>They do, however, limit the types of jobs that he can successfully perform</u>."

22.    Plaintiff has a high school education.

23.    Plaintiff's last job was a deck hand.

24.    Defendant's own examiner did not indicate which jobs, if any jobs, Plaintiff could actually perform in light of his findings, *inter alia*, that Plaintiff suffers from:

   ◦ "Very serious verbal and visual memory problems";

   ◦ "Impaired daily functioning";

   ◦ "Unable to write a sentence correctly";

   ◦ Unable to draw figures;

   ◦ Concerns of cognitive dysfunction;

   ◦ IQ of 71;

   ◦ Functioning worse than 96% of his peers;

   ◦ A memory worse than 99% of his peers;

   ◦ His "tremendous difficulty learning new information";

   ◦ His "very serious difficulties with both verbal and visual learning skills";

   ◦ His inability to connect dots in a sequence;

◦ His inability to read sentences, without great delay, on his own; or

◦ His limited psychological insight.

25.    Simply, Defendant's own neuropsychological provider's conclusions are not supported by his own factual findings but rather demonstrate a willingness to answer *conclusions* in a manner favorable to Defendant.

26.    Defendant adopted Defendant's own neuropsychological provider's stated *conclusions* rather than his factual findings, the findings of the other treating physicians, and the supporting evidence of the Social Security conclusion.   The evidence clearly weighed in favor of a finding of continued disability, under the post 24-month definition, but Defendant refused to credit it.

27.    To illustrate further the flaw in Defendant's decision-making, it is clear Defendant ignored the great factual findings of Plaintiff's treating mental providers and Defendant's own neuropsychological provider.   This is patently evident in Defendant's finding that Plaintiff possessed "transferable skills" of "using arithmetic for collecting delivery receipts or money," "knowledge of production machine setup and adjustment," "reading blueprints, wiring diagrams and other work specifications," "directing work of others," and employing math skills to plan schedules and maintain production

records and reports," "applying math skills to read and interpret business and statistical reports and records," "analyzing and interpreting administrative policy and procedure," "planning and organizing work of others," "making decisions based on business reports or similar data," speaking and writing clearly," "preparing budgets," and "keeping records." Plaintiff simply does not.

28.     Further evidence of the arbitrary and capriciousness of Defendant's conclusion, and the amplifying of Plaintiff's ability over disability, is its belief that Plaintiff could be a "welder," among other jobs.   The welder job, under DOT Code 819.684-010, requires: "Welds metal parts on production line, using previously set up gas- or arc-welding equipment: Turns valves to release fuel gas and oxygen and ignites mixture, or inserts specified weld rod into portable holder, clamps cable onto workpiece or jig, and strikes arc. Guides electrodes, or torch and filler rod, along horizontal weld line at specified speed and angle to melt and deposit metal from filler rod or electrode onto workpiece. May skip (tack) weld designated spots to secure workpieces for other welders. May use different equipment and be designated Brazer, Production Line (welding); Welder, Production Line, Arc (welding); Welder, Production Line, Combination (welding); Welder, Production Line, Gas (welding)."

29.     Persons like Plaintiff, who have "very serious verbal and visual

8

memory problems," "impaired daily functioning," concerns of cognitive dysfunction, and an IQ of 71, who also function worse than 96% of their peers, remember less than 99% of their peers, have "tremendous difficulty learning new information," along with "very serious difficulties with both verbal and visual learning skills," and cannot even connect dots in a sequence, much less read sentences on his own, clearly cannot work with gas valves and ignite hazardous mixtures.2

30.    The cumulative impact of Plaintiff's physical and mental impairments preclude Plaintiff from work and meet the continuing definition of disability after 24 months.   Accordingly, Defendant's decision violates the plain meaning of its Plan and/or is arbitrary and capricious.

# III.
## CAUSES OF ACTION

31.    Defendant's decision cost Plaintiff disability benefits for which he paid, and for which he was eligible.   Accordingly, Plaintiff must bring this suit for payment of long term disability benefits pursuant to **ERISA** for the following:

## A.    Payment of All Disability Benefits Owed (Back and Future Disability Benefits) or, in the discretion of the Court, remand to the Plan Administrator

2        Similarly, for Defendant's other chosen occupations of Warehouse Worker, 922.687-058, the evidence clearly shows Plaintiff could not read production schedules, work orders, shipping orders, etc., or sort and place materials based on sequences like size, type, color, etc.   Nor could he fill requisitions, work orders, etc.   Nor could he use computer to enter records.   For the Assembly position, 819.684-010, Plaintiff could not "place parts in specified relationships to each other."   Nor could he be placed on lines where tasks very according to part or product.

for full and fair review; and

B.    Payment of Attorneys Fees and Costs.

WHEREFORE, PREMISES CONSIDERED, plaintiff seeks recovery from the defendant, demanding judgment against it for the back disability benefits owed; future disability benefits; pre-judgment interest; attorneys' fees, costs, interest, and any further legal or equitable relief available.

Respectfully Submitted,

**GILBERT & RUSSELL, PLC**

/s Justin S. Gilbert
Justin S. Gilbert
TN Bar No. 017079
Jonathan L. Bobbitt
TN Bar No. 23515
Jessica F. Salonus
TN Bar No. 28158
101 N. Highland Ave.
Jackson, TN 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540

**ATTORNEYS FOR PLAINTIFF**

10